UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION,<br><br>Plaintiff(s),<br><br>v.<br><br>SFR INVESTMENTS POOL I, LLC, et al.,<br><br>Defendant(s). | Case No. 2:17-CV-1220 JCM (VCF)<br><br>ORDER |

Presently before the court is plaintiff U.S. Bank National Association's ("U.S. Bank") motion for summary judgment. (ECF No. 41). Defendants SFR Investments Pool 1, LLC ("SFR") and Seasons at Aliante Community Association ("Seasons") filed separate responses (ECF Nos. 44, 45), to which U.S. Bank filed separate replies (ECF Nos. 49, 50).

Also before the court is SFR's motion for summary judgment. (ECF No. 42). U.S. Bank filed a response (ECF No. 43), to which SFR replied (ECF No. 48).

**I.  Facts**

This action arises from a dispute over real property located at 6427 Grayback Drive, North Las Vegas, Nevada 89084; APN 124-20-412-093 ("the property"). (ECF No. 1).

Keith and Maresia Malone ("the Malones") purchased the property on June 7, 2005. (ECF No. 4-1). The Malones financed the purchase with a loan in the amount of $576,000.00 from Aegis Lending Corporation ("Aegis"). (ECF No. 41-1). Aegis secured the loan with a deed of trust, which names Aegis as the lender, Old Republic Title as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary as nominee for the lender and lender's successors and assigns. (ECF No. 41-2). On September 10, 2009, U.S. Bank acquired all

**James C. Mahan**
**U.S. District Judge**

beneficial interest in the deed of trust via an assignment, which U.S. Bank recorded with the Clark County recorder's office. (ECF No. 41-3).

On January 18, 2013, Seasons, through its agent defendant Assessment Management Services ("AMS"), recorded a notice of delinquent assessment lien ("the lien") against the property for the Malones' failure to pay Seasons in the amount of $864.60. (ECF No. 42-1). On August 14, 2013, Seasons recorded a notice of default and election to sell pursuant to the lien, stating that the amount due was $2,080.14 as of August 13, 2013. (ECF No. 41-4). On August 21, 2013, Seasons mailed the notice of default to U.S. Bank. (ECF No. 42-1). U.S. Bank acknowledges receiving the notice but does not identify the date of receipt. (ECF No 42-1).

On April 9, 2014, Seasons recorded a notice of foreclosure sale against the property. (ECF No. 41-9). On that same day, U.S. Bank received the notice of foreclosure sale. (ECF No. 42-1). On May 2, 2014, Seasons sold the property in a nonjudicial foreclosure sale to SFR in exchange for $27,000.00. (ECF No 41-10). On May 14, 2014, Seasons recorded the deed of foreclosure with the Clark County recorder's office. *Id*.

On May 1, 2017, U.S. Bank initiated this action. (ECF No. 1). In its amended complaint, U.S. Bank alleges five causes of action: (1) quiet title/declaratory relief under the Takings Clauses of Fifth and Fourteenth Amendments against all defendants; (2) quiet title/declaratory relief under the Due Process Clauses of the Fifth and Fourteenth Amendments against all defendants; (3) wrongful foreclosure against all defendants; (4) violation of NRS 116.1113 *et seq.* against Seasons and AMS; and (5) quiet title against all defendants. (ECF No. 22).

Now, U.S. Bank and SFR have filed cross-motions for summary judgment, requesting that the court resolve whether the foreclosure sale extinguished the deed of trust. (ECF Nos. 41, 42).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is

"to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040,

James C. Mahan
U.S. District Judge

- 3 -

1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

U.S. Bank and SFR dispute whether the deed of trust encumbers the property. (ECF Nos. 41, 42). Because U.S. Bank has failed to provide sufficient grounds to set aside the foreclosure sale, the court will deny U.S. Bank's motion for summary judgment (ECF No. 41) and grant SFR's motion for summary judgment (ECF No. 42).

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, a party must show that its claim to the property is superior to all others in order to succeed on a quiet title action. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

NRS 116.3116 *et seq.*[1] ("Chapter 116") allows an HOA to place a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Under NRS

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are

116.3116(2), HOA liens have priority over other encumbrances. Nev. Rev. Stat. § 116.3116(2). However, some encumbrances are not subject to an HOA lien's priority, including "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

Chapter 116 then provides an exception to the subparagraph (2)(b) exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Under Chapter 116, an HOA can enforce its superpriority lien with a nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

NRS 116.31166(1) provides that when an HOA forecloses on a property pursuant to NRS 116.31164, the following recitals in the deed are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern . . . all statutory prerequisites to a valid HOA lien foreclosure sale." *See Shadow Wood Homeowners Assoc. v. N.Y.*

---

to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

[2] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

*Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions even when an HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of foreclosure sale, and the recorded trustee's deed upon sale. *See* (ECF Nos. 42-1, 41-4, 41-9, 41-10). Further, the recorded foreclosure deed contains the necessary recitals to establish compliance with NRS 116.31162 through NRS 116.31164. (ECF No. 41-10); *See id*. at 1112. Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale was valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

While NRS 116.3116 accords certain deed recitals conclusive effect, it does not conclusively entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id*.

U.S. Bank contends that the foreclosure sale did not extinguish U.S. Bank's deed of trust for four reasons: (1) Chapter 116 is unconstitutional under the Due Process Clause; (2) Chapter 116 is unconstitutional under the Takings Clause; (3) Seasons did not provide U.S. Bank with adequate notice; and (4) the foreclosure sale was commercially unreasonable. (ECF No. 41).

  *i.  Constitutionality of Chapter 116 (Due Process Clause)*

U.S. Bank argues that the court should grant summary judgment because, under *Bourne Valley*, Seasons foreclosed pursuant to a facially unconstitutional state statute. (ECF No. 41); *see*

---

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

*Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*"). However, U.S. Bank's reliance on *Bourne Valley* is misplaced.

In *Bourne Valley*, the Ninth Circuit held that Chapter 116 violated the Due Process Clause of the Fourteenth Amendment because it did not require a party foreclosing on a property to provide notice to a holder of any subordinate security interest. *Bourne Valley*, 832 F.3d at 1159. This conclusion was based on the interpretation that NRS 116.31168(1) did not incorporate NRS 107.090, which requires notice of default to any person with a subordinate security interest. *Id*.

When the Ninth Circuit ruled in *Bourne Valley*, there was no authority on the interpretation of NRS 116.31168(1). Left with the general doctrines of statute interpretation, the court declined to incorporate NRS 107.090 on the grounds that it would render NRS 116.31168(1) superfluous. *Id*. (citing *S. Nev. Homebuilders Ass'n v. Clark Cnty.*, 117 P.3d 171, 173 (2005)).

Since the Ninth Circuit's decision in *Bourne Valley*, the Nevada Supreme Court has provided its interpretation of Chapter 116, holding that NRS 116.31168(1) does incorporate NRS 107.090. *SFR Invs. Pool 1, LLC. v. The Bank of N.Y. Mellon*, 422 P.3d 1248, 1252 (Nev. 2018) (expressly refuting *Bourne Valley*). Under this ruling, NRS 116.31168(1) requires notice to subordinate interest holders and, thus, does not violate the Fourteenth Amendment. *Id*.

Both the Ninth Circuit and the Supreme Court have recognized, "a [s]tate's highest court is the final judicial arbiter of the meaning of state statutes." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (citing *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975)); *see also Knapp v. Cardwell*, 667 F.2d, 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret, and, where they see fit, to reinterpret the states' legislation."). Accordingly, this court will follow the Nevada Supreme Court's decision and hold that Seasons foreclosed on the property pursuant to a constitutional statute.

*ii. Constitutionality of Chapter 116 (Takings Clause)*

U.S. Bank contends that Chapter 116 violates Takings Clause of the Fifth Amendment. (ECF No. 41).

The Takings Clause prohibits the state from taking private property for public use without just compensation. U.S. Const. amend. V; *see also Single moms, Inc. v. Montana Power Co.*, 331

F.3d 743, 746 (9th Cir. 2003) (holding that the United States Constitution protects individuals only from government actions.). U.S. Bank's contention, however, has already been rejected. *See, e.g.*, *Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortgage, a Div. of Wells Fargo Bank, N.A.*, 388 P.3d 970, 974 (Nev. 2017) ("[T]he extinguishment of a subordinate deed of trust through an HOA's nonjudicial foreclosure does not violate the Takings Clauses.").

Further, because this case involves a private lien-holder conducting a nonjudicial foreclosure, there is no government action. *See also Apao v. Bank of New York*, 324 F.3d 1091, 1095 (9th Cir. 2003) (a lender's non-judicial foreclosure pursuant to state law was not a government action); *Mendez v. Fiesta Del Norte Home Owners Ass'n*, No. 2:15-CV-00314-RCJ-NJ, 2015 WL 3507699, at *3 (D. Nev. June 4, 2015) ("non-judicial foreclosure sales by private lien-holders are not traditional government functions"); *see also Deutsche Bank national trust Company v. TBR I, LLC*, No. 3:15-CV-00401-LRH-WGC, 2016 WL 3965195 at *3 (D. Nev. July 22, 2016) (holding that a nonjudicial foreclosure pursuant to Chapter 116 does not constitute government action).

*iii. Due Process*

U.S. Bank argues that Seasons did not provide notice of the foreclosure sale in compliance with the Due Process Clause of the Fourteenth Amendment. (ECF No. 41). The court disagrees.

"A first deed of trust holder only has a constitutional grievance if he in fact did not receive reasonable notice of the sale at which his property rights was extinguished." *Wells Fargo Bank, N.A. v. Sky Vista Homeowners Ass'n*, No. 3:15-cv-00390-RCJ-VPC, 2017 WL 1364583, at *4 (D. Nev. Apr. 13, 2017). To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

U.S. Bank confuses constitutionally mandated notice with the notices required to conduct a valid foreclosure sale. Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present

- 8 -

their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Here, Seasons provided reasonably calculated notice when it mailed multiple copies of the notice of default and notice of foreclosure sale to U.S. Bank. (ECF No. 42-1). Further, U.S. Bank's designated Rule 30(b)(6) witness, Travis Ashman, admits in his deposition testimony that U.S. Bank timely received a copy of the notice of foreclosure sale. (ECF No. 42-1). Such receipt was sufficient to apprise U.S. Bank of the foreclosure sale and afford it an opportunity to present objections. Therefore, U.S. Bank's due process argument fails as a matter of law. *See, e.g.*, *Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity.").

*iv. Commercial reasonability*

SFR and Seasons argue that the foreclosure sale was commercially reasonable because the sale price ($27,000.00) was not grossly inadequate given the conditions under which the property was sold and because U.S. Bank has not presented any evidence of fraud, unfairness, or oppression. (ECF Nos. 44, 45).

U.S. Bank argues that the court should grant its motion because the foreclosure sale for less than 9% of the property's fair market value ($321,000.00) is grossly inadequate and because U.S. Bank can establish evidence of fraud, unfairness, or oppression. (ECF No. 41).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[3]

---

[3] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential

James C. Mahan
U.S. District Judge

- 9 -

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963))) ("*Long*").

U.S. Bank overlooks the reality of the foreclosure process. The amount of the lien—not the fair market value of the property—is what typically sets the sales price. Further, U.S. Bank fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify setting aside of the foreclosure sale. U.S. Bank relies on its repeated allegations that Seasons failed to provide adequate notice of the foreclosure and made various misrepresentations regarding the lien collection process. However, as discussed in the previous section, the amount due was set forth in the notice of default and election to sell and, subsequently, in the notice of foreclosure sale. (*See* ECF Nos. 41-4, 41-9). Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, U.S. Bank chose to allow the foreclosure sale to proceed.

Accordingly, U.S. Bank's commercial reasonability argument fails as a matter of law, as U.S. Bank failed to set forth sufficient evidence of fraud, unfairness, or oppression. *See, e.g., Nationstar Mortg., LLC*, No. 70653, 2017 WL 1423938, at *3 n.2 ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

---

property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

**IV. Conclusion**

In light of the foregoing, U.S. Bank has not provided sufficient grounds for the court to set aside the foreclosure sale.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that U.S. Bank's motion for summary judgment (ECF No. 41) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that SFR's motion for summary judgment (ECF No. 42), be and the same hereby is, GRANTED.

The clerk shall enter judgment accordingly and close the case.

DATED November 14, 2018.

/s/ James C. Mahan
UNITED STATES DISTRICT JUDGE